**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAJVIR BATRA,<br><br>                Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS INC.,<br><br>                Defendant. | **CASE NO.:**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1.    FCRA, 15 U.S.C. §1681 *et seq*. |

Plaintiff Rajvir Batra ("Plaintiff"), by and through his undersigned attorneys, alleges the following against EXPERIAN INFORMATION SOLUTIONS INC. ("Experian" or "Defendant") alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for actual, statutory and punitive damages, costs and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681a–x.

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The Act likewise demands that consumers' disputes of inaccurate information be taken seriously by industry players, requiring that they do much more than simply pass information between themselves electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Plaintiff is the victim of what is now a common crime—identity theft. A fraudster used Plaintiff's personal information to open credit accounts with American Express Company, Barclays Bank Delaware, Discover Financial Services, Inc. and Banco Popular de Puerto Rico, a subsidiary of Popular Inc., without Plaintiff's knowledge or consent.

5. Plaintiff has asserted the factual truth—the accounts did not belong to him, and he did not authorize them. Yet American Express, Barclays, Discover, and Banco Popular continued to press on.

6. American Express, Barclays, Discover, and Banco Popular also reported the inaccurate accounts to Experian. Plaintiff disputed the inaccuracies to them as well, to no avail.

7. The FCRA demands of reporting agencies like Experian that they utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

8. Also, when a consumer disputes the accuracy of information with the agencies, they must transmit that dispute to the entity who furnished the information, here American Express, Barclays, Discover, and Banco Popular. American Express, Barclays, Discover, and Banco Popular, the furnishers, must then conduct their own, independent investigation of the dispute. *Id.* § 1681s-2(b).

9. Plaintiff brings claims under Section 1681e(b) against Experian because it reported about Plaintiff inaccurate information regarding the American Express, Barclays,

Discover, and Banco Popular accounts. When Plaintiff disputed the inaccuracies, the agency did not reasonably investigate, also violating Section 1681i.

10. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017). This is particularly true as to how Experian has complied with their now 50-year-old obligation to conduct a meaningful accuracy investigation. Experian has been repeatedly sued by consumers, sanctions by regulators and reprimanded by both District and Appellate courts to do more than an automated parroting of what their customer-creditors instruct. Had it followed that advice and heeded those warnings, the Plaintiff would not have been harmed.

## JURISDICTION & VENUE

11. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1367.

12. The Plaintiff is a natural person and resident of the State of New York. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

13. Defendant transacts business in the State of New York. Defendant is registered to conduct business and have appointed registered agent in New York County, New York. Therefore, personal jurisdiction is established.

## PARTIES

14. Plaintiff, Rajvir Batra, is a natural person residing in Nassau County, New York.

15. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

16. Defendant Experian Information Solutions Inc. is headquartered in California and does business in the State of New York through it registered agent located in New York, New York.

17. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

18. Defendant acted through its agents, employees, officers, members, directors, heirs, predecessors, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## GENERAL FACTUAL ALLEGATIONS

*Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of Experian's Creditor-Customers*

19. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001)."In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

20.    "Section 1681e(b) sets forth the CRAs' overall du[t]y:

(b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

21.     Section 1681i(a), on the other, hand requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through his dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

22. Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

23. It has long been the law that a CRA, such as Experian, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item. *See, e.g.*, *Pinner v. Schmidt,* 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins*

*v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

24. That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir.1997).

25. As the Fourth Circuit explained in *Johnson v. MBNA*:

The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 3d 426, 430 (4th Cir. 2004).

26. Further, as Experian is aware, this Court has held that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendants has a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

27. It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.
> Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

28. Today, furnishers such as American Express, Barclays, Discover, and Banco Popular and other of Experian's furnishers have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2.  But while the CRA Defendants' duties under § 1681e(b) were enacted in 1970 and have governed since, the duties on furnishers are much recent, enacted on in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

### *Plaintiff Discovers Experian was Inaccurately Reporting Credit Accounts That Did Not Belong To Him*

29. Sometime in or around 2021, Plaintiff discovered that he was the victim of what is now a common crime—identity theft. A fraudster used Plaintiff's personal information to open accounts with several financial institutions without Plaintiff's knowledge or consent.

30. Upon discovery of the crime, Plaintiff immediately filed a report with his local police department.

---

[1]  Available at https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

31. Plaintiff then pulled his Experian consumer report and discovered the unauthorized accounts belonged to American Express, Barclays Bank, Discover and Banco Popular ("Accounts").

32. The Plaintiff has never opened nor used these accounts at all.

33. Upon discovering the fraudulent debts, Plaintiff immediately disputed the debts with either the actual account holders or the credit reporting bureaus.

*Plaintiff Disputes The Inaccuracies With Experian*

34. Having learned that American Express, Barclays, Discover, and Banco Popular inaccurately reported the status of the accounts to Experian, Plaintiff sent disputes to Experian to attempt to have them remove the inaccuracies from his credit report.

35. On or around November 23, 2021, Plaintiff sent correspondence to Experian, requesting that Experian verify and correct the inaccurate, erroneous and unverified representations made by American Express, Barclays, Discover, and Banco Popular accounts on his credit file.

36. In that letter, Plaintiff explained that the American Express, Barclays, Discover, and Banco Popular accounts Experian were attributing to him was not his and he did not authorize them.

37. Subsequent to Plaintiff's disputes, Experian failed to remove the inaccurate information regarding the American Express, Barclays, Discover, and Banco Popular accounts contained within Plaintiff's credit reports.

*Plaintiff Disputes The Inaccuracies With*
*American Express, Barclays, Discover, and Banco Popular*

38. A check of his consumer files maintained by Experian revealed that American Express was furnishing information about an account to Experian, as belonging to the Plaintiff.

39. The information furnished by American Express to Experian, was at all times inaccurate. Plaintiff's identity was stolen to open this account.

40. On or about November 23, 2021, Plaintiff sent correspondence to Experian, requesting that Experian verify and correct the inaccurate, erroneous and unverified representations made by American Express on his credit file.

41. On or about a date better known to Experian and American Express, Experian furnished Plaintiff's dispute to American Express via e-Oscar.

42. American Express failed to reasonably reinvestigate Plaintiff's dispute that American Express received from Experian in violation of the FCRA.

43. At the date of this filing, American Express has failed to reasonably reinvestigate into Plaintiff's dispute and has failed to accurately correct and update or delete Plaintiff's information.

44. A check of his consumer files maintained by Experian revealed that Barclays was furnishing information about an account to Experian, as belonging to the Plaintiff.

45. The information furnished by Barclays to Experian, was at all times inaccurate. Plaintiff's identity was stolen to open this account.

46. On or about November 23, 2021, Plaintiff sent correspondence to Experian, requesting that Experian verify and correct the inaccurate, erroneous and unverified representations made by Barclays on his credit file.

47. On or about a date better known to Experian and Barclays, Experian furnished Plaintiff's dispute to Barclays via e-Oscar.

48. Experian's records showed that the Barclays account was opened in 2017, when Plaintiff was 16 years old. Plaintiff was therefore a minor, and therefore unable to lawfully open a credit account, the year the Barclays account was opened.

49. When Barclays returned its investigation results to Experian via e-OSCAR, Barclays changed the year of Plaintiff's birth from the correct year of 2001 to 1982.

50. Despite Barclays adding 19 years to Plaintiff's life, and that the new birth year contrasted with the birth year of 2001 reflected on Plaintiff's drivers license that he included with his disputes, no one at Experian found this fact to be out of the ordinary.

51. Barclays failed to reasonably reinvestigate Plaintiff's dispute that Barclays received from Experian in violation of the FCRA.

52. At the date of this filing, Barclays has failed to reasonably reinvestigate into Plaintiff's dispute and has failed to accurately correct and update or delete Plaintiff's information.

53. A check of his consumer files maintained by Experian revealed that Discover was furnishing information about an account to Experian, as belonging to the Plaintiff.

54. The information furnished by Discover to Experian, was at all times inaccurate. Plaintiff's identity was stolen to open this account.

55. On or about November 23, 2021, Plaintiff sent correspondence to Experian, requesting that Experian verify and correct the inaccurate, erroneous and unverified representations made by Discover on his credit file.

56. On or about a date better known to Experian and Discover, Experian furnished Plaintiff's dispute to Discover via e-Oscar.

57. Experian's records showed that the Discover account was opened in 2017, when Plaintiff was 16 years old. Plaintiff was therefore a minor, and therefore unable to lawfully open a credit account, the year the Discover account was opened.

58. When Discover returned its investigation results to Experian via e-OSCAR, Discover changed the year of Plaintiff's birth from the correct year of 2001 to 1982.

59. Despite Discover adding 19 years to Plaintiff's life, and that the new birth year contrasted with the birth year of 2001 reflected on Plaintiff's driver's license that he included with his disputes, no one at Experian found this fact to be out of the ordinary.

60. Discover failed to reasonably reinvestigate Plaintiff's dispute that Discover received from Experian in violation of the FCRA.

61. At the date of this filing, Discover has failed to reasonably reinvestigate into Plaintiff's dispute and has failed to accurately correct and update or delete Plaintiff's information.

62. A check of his consumer files maintained by Experian revealed that Banco Popular was furnishing information about an account to Experian, as belonging to the Plaintiff.

63. The information furnished by Banco Popular to Experian, was at all times inaccurate. Plaintiff's identity was stolen to open this account.

64. On or about November 23, 2021, Plaintiff sent correspondence to Experian, requesting that Experian verify and correct the inaccurate, erroneous and unverified representations made by Banco Popular on his credit file.

65. On or about a date better known to Experian and Banco Popular, Experian furnished Plaintiff's dispute to Banco Popular via e-Oscar.

66. Banco Popular failed to reasonably reinvestigate Plaintiff's dispute that Banco Popular received from Experian in violation of the FCRA.

67. At the date of this filing, Banco Popular has failed to reasonably reinvestigate into Plaintiff's dispute and has failed to accurately correct and update or delete Plaintiff's information.

### *Experian Did Not And Do Not Conduct Any Investigation Of Most Consumer Disputes*

68. It has long been the practice of Experian to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to an affiliated company, Experian Services Chile, S.S. in Santiago, Chile.

69. Experian's dispute processing vendor is not hired to perform an actual FCRA investigation. Instead, its sole responsibility is to read consumer dispute letters, select one of a handful of common dispute codes from a drop-down menu and then click that code.

70. Here is how the written mail dispute process actually works: Experian receives and scans the mail into batches directly out of its facility in Texas.

71. Experian then outsources its dispute procedures to an affiliated company, Experian Services Chile, S.A., in Santiago Chile.

72. Experian long ago lost the argument that testimony from these dispute agents requires more than garden-variety Rule 30 notice. *See Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 510 (D. Idaho 2013).

73. Experian also produced its Chilean dispute agent in a case in which Plaintiff's Counsel here represented a different consumer in an FCRA case in the Eastern District of Virginia, *Sublett v. Nissan of Richmond, LLC, et al.*, No. 3:20-cv-156 (E.D. Va.). Little should change in this case.

74. To the extent Experian would argue here that it cannot produce its Chilean dispute agents pursuant to a Rule 30 notice, then Plaintiff will pursue his 1681i failure-to-investigate claim on the theory that no investigation was conducted by the CRA.

75. Regardless of whether or not these statements are correct, Experian believes that it cannot direct, control, manage or reliably influence the employees of its third-party Chilean outsource vendor.

76. Experian itself did not conduct any reinvestigation of Plaintiff's many disputes. Instead, it merely caused them to be removed from their control to be saved within a database by an overseas data-processing vendor.

### *Plaintiff Suffered Actual Harm*

77. Defendant has continued to report the erroneous accounts on the Plaintiff's credit report, despite being notified that Plaintiff was a victim of identity theft.

78. Plaintiff has been attempting to resolve these matters with Defendant for over a year and his credit was significantly destroyed by Defendant's failure to correct the inaccurate reporting.

79. As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

    a. Stress associated with multiple denials for personal loans, credit cards, and delays in applying for future lines of credit;

b.  Monies lost by attempting to fix his credit, e.g. communication costs, postage for disputes;

c.  Loss of time attempting to cure the errors;

d.  Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

e.  Stress associated with hundreds of hours attempting to resolve this matter in the last year.

### *Defendant's Conduct Was Willful*

80. The FCRA allows for a remedy for a "willful" violation.  A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007).  A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

81. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418;  *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

82. As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years.  The language of § 1681e(b) has not changed.  The Defendant's dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendant's "grave responsibilities" to ensure accuracy has not changed.

83. Experian has received many thousands of disputes and other complaints regarding the creditors at issue in this case – sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting.

84. Just in federal court alone, during the last decade the creditor-furnishers disputed by Plaintiff has had to defend collectively over 1,000 consumer lawsuits.

85. In many or even most of these FCRA lawsuits brought by a consumer, one or more of the Experian was a named co-defendant.

86. Experian knew or should have known of this litigation history.  It uses and have access to PACER to investigate and monitor such consumer complaints.

87. The CFPB has maintained a Consumer Complaint database since 2017.  It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many multiples more are made directly to the Defendants, and/or to other government agencies, attorneys, or non-profit organizations.

88. Defendant regularly receives unredacted consumer dispute details from this database.

89. Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Experian.

90. Further, more than 33,000 complaints as to Experian were based largely on their failure to reasonably investigate consumer disputes.

91. Just in the last 12 months alone, Experian, has been sued on by consumers alleging their violation of the FCRA over 2,000 times.  Most of these alleged that the Defendant violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute.  This complaint history has been true for nearly every year over the last decade.

92. While the thousands of consumer complaints and hundreds of thousands of consumer disputes alone would have put Defendant on notice of the failures of its dispute investigation procedures in ensuring accuracy, numerous Federal District and Circuit Courts have placed the Defendant on notice that it may not merely "parrot" what its creditor-customer tells them if the consumer had provided a substantive and detailed dispute.

93. Experian has had actual notice from numerous other courts that their blind ACDV "parroting" was unlawful. *See, e.g.*, *Centuori v. Experian Info. Sols., Inc.*, 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006) ("'The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources.'"); *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 (3d Cir. 2011); *Pourfard v. Equifax Info. Sols. LLC*, 2010 WL 55446 (D. Or. Jan. 7, 2010) ("[T]he caselaw is clear that a reporting agency does not act reasonably under the FCRA by deferring entirely to another source of information."); *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066, 1073-74 (D. Or. 2011) ("[Equifax] instead utilized an automated dispute system to verify the accuracy of plaintiffs' account. Many courts, including this one, have concluded that where a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation.").

94. Defendant has also been repeatedly criticized by Federal and state regulators, and consumer groups for the refusal or failure to conduct substantive reinvestigations.

95. In 2015, a large group of state Attorneys General forced a consent order from the CRA Defendants by which they were required to develop procedures necessary to comply with the FCRA.[2]  The AG Settlement required amongst many changes and mandates that the Defendant comply with § 1681i(a).

96. The AG Settlement also required the CRA Defendants to conduct significant research and data gathering – even creating a "working group" to address these issues, and to develop special procedures to handle disputes as in this case.  Notwithstanding these requirements, the Defendants did not meaningfully comply with the AG Settlement in these regards.

97. Defendant is also aware of substantive and detailed criticism by public interest groups about their automated dispute system.  For example, in 2009, the National Consumer Law Center ("NCLC"), the organization that publishes the leading egal treatise in this field, also published a scathing research paper detailing the actual process followed by Defendants when a consumer makes a dispute.  That report was updated in 2019. AUTOMATED INJUSTICE REDUX *Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors*, National Consumer Law Center, February 2019. ("NCLC Report").[3]

98.    The NCLC Report summarized its context:

Ten years ago, the National Consumer Law Center (NCLC) issued Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports, the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian and TransUnion), and started the difficult

---

[2]    Available at https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

[3] Available at https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the credit bureaus in 2015, requiring an array of reforms. Despite these very laudable achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

99.     Among many of the Defendant's accuracy failures, the NCLC Report discovered:

- **Insufficient Information Conveyed and Considered in Investigation**.  Credit bureaus use the highly automated e-OSCAR system to convey disputes to furnishers, primarily using shorthand two- or three-digit codes, and at most only a line or two of text in a minority of instances. The credit bureaus use the same four or five codes over 80% of the time.

- **Failure to Transmit Information Submitted by the Consumer**. Credit bureaus failed to send supporting documentation submitted by consumers to furnishers, in clear violation of the FCRA.

- **Perfunctory Credit Bureau Investigations**. Credit bureaus limit the role of their employees who handle disputes, or of the foreign workers employed by their offshore vendors, to little more than selecting these two or three digit codes. Workers do not examine documents, contact consumers by phone or email, or exercise any form of human discretion in resolving a dispute.

- **Credit Bureaus Always Side with Furnishers**. Credit bureaus are universally biased in favor of furnishers and against consumers in disputes. In a practice known as "parroting," credit bureaus blindly adopted the response of the furnisher without performing any independent review.

NCLC Report at 6.

100.    Despite the notice and judicial, regulatory and public interest criticism, Defendant have refused to change its dispute investigation process because it would cost too much money to do so.

101.    Defendant's procedures imposed on the Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## CLAIMS FOR RELIEF

### COUNT 1: Violation of § 1681e(b) of the FCRA

102.    The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

103.    Defendant Experian willfully violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files they published and maintained concerning the Plaintiff.

104.    As a result of this conduct, action and inaction of Experian, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, the mental and emotional pain and anguish and the humiliation and embarrassment of having to borrow money and offer explanations for why he lost the ability to benefit from credit.

105.    Further, after the Plaintiff's details dispute put it on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of their creditor-customers, Experian ignored such information and did not use any human or substantive review to confirm and verify that its procedures were ensuring maximum possible accuracy of the Plaintiff's credit report.

106.    Defendant furnished multiple consumer reports to third parties containing the inaccurate tradelines information and Defendant did so after receiving notice of these inaccuracies.

107.    Experian's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

108.    As a result of Experian's violations of 15 U.S.C. § 1681e(b), the Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative him statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

109.    The Plaintiff is entitled to recover costs and attorney's fees from Experian, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT 2: Violation of § 1681i of the FCRA

110.    Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

111.    The § 1681i(a)(2)(A) of the FCRA provides that if a consumer contacts a consumer reporting agency to dispute the accuracy or completeness of any information in their credit file, the agency shall conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate or delete the item from the file within thirty (30) days of receiving the consumer's dispute notice. 15 U.S.C. § 1681i(a)(2)(A).

112.    The FCRA also requires the credit reporting agency, within five business days of receiving notice of the consumer's dispute, provide notification of the dispute to the person or entity who furnished the information in dispute. When the credit reporting agency reports the disputed information to the furnisher, the FCRA requires it to

"include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A). While conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

113.    It is evident that Defendant Experian failed to review and consider all relevant information submitted by Plaintiff.

114.    Further, Defendant Experian violated 15 U.S.C. § 1681i(a)(2)(A) by failing to investigate, let alone a reinvestigate, the inaccuracies disputed by Plaintiff.

115.    Upon information and belief, Defendant Experian also failed to forward Plaintiff's dispute to any of the persons or entities incorrectly furnishing information to Defendant Experian. As such, Defendant Experian violated 15 U.S.C. § 1681i(a)(2)(A).

116.    Experian willfully violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's consumer file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Plaintiff's creditors and/or creditors' attorneys; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

117.    Further Experian violated Section 1681i by conducting ***no investigation at all***. Section 1681i demands that when Plaintiff notified each CRA directly of his disputes, that party—the consumer reporting agency who received the disputes—must

investigate those disputes. The statute does not contemplate someone other than Experian conducting the investigation.

118.    Yet, Experian used an unrelated third-party, over which it has no control, to conduct its investigations. Experian Services Chile, S.A is not, in the words of the statute, "the [consumer reporting] agency" to whom Plaintiff disputed. Experian therefore violated 1681i on this basis because they sent Plaintiff's disputes away to a company that was not their controlled agent rather than investigating them as required.

119.    As a result of the above-described violations to § 1681i, Plaintiff has sustained damages including denial of credit, emotional distress, and mental and physical pain.

120.    As a result of Defendant's violations of 15 U.S.C. § 1681i, the Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## **JURY DEMAND**

121.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Rajvir Batra respectfully requests judgment be entered against Defendants for the following:

   A.  Declaratory judgment that Defendant violated the FCRA;

   B.  Actual damages pursuant to 15 U.S.C. §1681n(a);

   C.  Statutory damages pursuant to 15 U.S.C. §1681n(a)(1)(A);

   D.  Punitive damages pursuant to 15 U.S.C. §1681n(a)(2);

E.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§1681n(c) and 1681o(b);

F.  Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law;

G.  Specific performance and injunctive relief; and

H.  Any relief that this Court deems appropriate.

Dated: July 25, 2023
      New York, New York

                    **LAW OFFICE OF ABEL L. PIERRE, ATTORNEY-AT-LAW, P.C.**

                    Attorney I.D.#AP-5508
                    140 Broadway, 46th Floor
                    New York, New York 10005
                    Telephone: (212) 766-3323
                    Facsimile: (212) 766-3322
                    Email: abel@apierrelaw.com

                    *Attorneys for Plaintiff*